| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| *versus* § | CASE NO. 1:13-CR-2(1) |
| § | |
| ROBERTO CANTU § | |

**MEMORANDUM AND ORDER**

Pending before the court is Defendant Roberto Cantu's ("Cantu") *Pro Se* Motion for Early Termination of Supervised Release (#54), wherein Cantu seeks early termination of his five-year term of supervised release. Cantu asserts that his supervising United States Probation and Pretrial Services ("Probation") Officer in the Southern District of Texas does not oppose his motion. His supervising Probation Officer in the Eastern District of Texas, however, prepared a report and recommends that the court deny the motion, allowing Cantu to continue on supervision as previously ordered. The Government is also opposed to Cantu's request for early termination. Having considered the motion, Probation's report, the Government's position, the record, and the applicable law, the court is of the opinion that Cantu's motion should be denied.

I.   Background

On January 10, 2013, a federal grand jury in the Eastern District of Texas, Beaumont Division, returned a single count Indictment against Cantu, charging him in Count One with Possession with Intent to Distribute a Controlled Substance, to wit: "actual" methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Pursuant to a written plea agreement, Cantu pleaded guilty to the offense charged in Count One of the Indictment on February 28, 2013. On August 7, 2013, the court sentenced Cantu to a term of 146 months' imprisonment, followed by a five-year term of supervised release. On October 28, 2015, his sentence was reduced to 118

months' imprisonment. Cantu began his term of supervised release on June 18, 2021, in the Southern District of Texas, which is projected to expire on June 17, 2026. On October 5, 2022, Cantu filed a Pro Se Letter Motion to Travel, which the court denied by Order dated February 13, 2023.

In his motion, Cantu, age 43, asks the court to terminate his supervision at this time, having served over half of his five-year term of supervised release. Cantu maintains that he has fully complied with all conditions of supervision and has no conditions requiring any sort of programming or counseling. He states that his supervision has been without incident and that he has steady employment, residence, and family life. Cantu contends that terminating his supervised release would enable him to support his family better financially, explaining that he is a trucker and would qualify for better routes if he were able to travel freely. He adds that he obtained his commercial driver's license about two years ago and has been employed by the same company, USA Truck, since that time. Cantu claims that he has fully reintegrated into society and is a valued worker, family member, and citizen. He concludes, "I am an ideal candidate for early termination of supervised release."

II.     Analysis

Title 18, United States Code, Section 3583(e) authorizes a district court to terminate supervised release at any time after the expiration of one year if, after considering the factors set forth in Section 3553(a),[1] "it is satisfied that such action is warranted by the conduct of the

---

[1] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable Sentencing

defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1); *accord United States v. Johnson*, 529 U.S. 53, 59-60 (2000); *United States v. Peters*, 856 F. App'x 230, 233 (11th Cir. 2021); *Herndon v. Upton*, 985 F.3d 443, 446 n.5 (5th Cir. 2021); *United States v. Melvin*, 978 F.3d 49, 52 (3d Cir. 2020); *United States v. Cochran*, 815 F. App'x 361, 363 (11th Cir. 2020); *United States v. Davies*, 746 F. App'x 86, 88-89 (3d Cir. 2018). "Early termination of supervised release is not an entitlement." *United States v. George*, 534 F. Supp. 3d 926, 927 (N.D. Ill. 2021). Instead, the defendant bears the burden of demonstrating that early termination is warranted. *Id.*; *United States v. Luna*, No. 1:95-cr-05036-AWI, 2018 WL 10156108, at *1 (E.D. Cal. Mar. 12, 2018), *aff'd*, 747 F. App'x 561 (9th Cir. 2018). Early termination "is not warranted as a matter of course." *United States v. Morris*, No. 3:99-cr-264-17 (VAB), 2022 WL 3703201, at *3 (D. Conn. Aug. 26, 2022). "To the contrary, it is only 'occasionally' justified." *United States v. Shellef*, No. 03-CR-0723 (JFB), 2018 WL 3199249, at *1 (E.D.N.Y. Jan. 9, 2018) (quoting *United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997)).

Although Cantu's supervising Probation Officer in the Southern District of Texas does not oppose his motion, this fact, standing alone, is insufficient to justify granting his request for early termination. *See*, *e.g.*, *United States v. Boyd*, 606 F. App'x 953, 960 (11th Cir. 2015) ("Just as a federal prosecutor or probation officer cannot dictate a district court's sentence, they likewise do not call the shots concerning a court's decision whether to terminate early a term of supervised release. A criminal sentence is the court's sentence, not the prosecutor's and not the probation officer's."); *United States v. Lynn*, No. S90-00053(P), 2022 WL 2446328, at *3 (S.D. Miss. May

---

Commission guidelines and policy statements; any pertinent policy statement of the Sentencing Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

31, 2022) (finding that although the Government and Probation did not oppose early termination, that fact, standing alone, was insufficient to justify granting the defendant's request for early termination of supervised release); *United States v. Hartman*, No. 3:00-cr-228-B(01), 2013 WL 524257, at *1 (N.D. Tex. Jan. 18, 2013) (denying defendant's request for early termination of supervised release despite the Government's recommendation that it be granted), *adopted by* 2013 WL 540490 (N.D. Tex. Feb. 13, 2013); *United States v. Grimaldi*, 482 F. Supp. 2d 248, 249 (D. Conn. 2007) (denying early termination of supervised release even though the defendant's probation officer supported it).

District courts enjoy considerable discretion in determining when the interest of justice warrants early termination. *United States v. Tacker*, 672 F. App'x 470, 471 (5th Cir. 2017); *United States v. Jeanes*, 150 F.3d 483, 484-85 (5th Cir. 1998); *Lynn*, 2022 WL 2446328, at *3; *see Melvin*, 978 F.3d at 52. Compliance with the terms of supervised release and with the law alone is not enough to merit early termination; such conduct is expected and required. *United States v. Taylor*, 729 F. App'x 474, 475 (7th Cir. 2018) ("[M]ere compliance with the terms of supervised release is expected, and without more, insufficient to justify early termination."); *United States v. Seymore*, No. CR 07-358, 2023 WL 3976200, at *1 (E.D. La. June 13, 2023) ("[C]ourts have generally held that something more than compliance with the terms of [supervised release] is required to justify an early termination . . . ." (quoting *United States v. Smith*, No. 10-cr-53-DPJ-FKB, 2014 WL 68796, at *1 (S.D. Miss. Jan. 8, 2014))); *Lynn*, 2022 WL 2446328, at *4 (although the defendant adhered to the conditions of his release, a balancing of the 18 U.S.C. § 3553(a) factors did not support early termination, noting that the defendant "engaged in constant serious criminal behavior when he was given chances before"); *United States v. Sandles*, No.

11-CR-204-PP, 2021 WL 3080995, at *3 (E.D. Wis. July 21, 2021) ("[C]ourts have held 'that the conduct of the defendant necessary to justify early termination should include more than simply following the rules of supervision; otherwise, every defendant who avoided revocation would be eligible for early termination.'" (quoting *United States v. O'Hara*, No. 00-cr-170, 2011 WL 4356322, *3 (E.D. Wis. Sept. 16, 2011))); *United States v. Boudreaux*, No. 2:19-CR-00377-01, 2020 WL 7635708, at *1 (W.D. La. Dec. 22, 2020); *United States v. Pittman*, No. 3:15-CR-221-O(1), 2020 WL 6564724, at *2 (N.D. Tex. Nov. 9, 2020) (finding that the conduct of the defendant did not warrant early termination of supervised release, as the defendant sought relief based on his circumstances and the alleged conduct of others) (citing 18 U.S.C. § 3583(e)(1)); *see United States v. Berger*, No. CR 09-308, 2021 WL 2354517, at *5 (W.D. Pa. June 9, 2021) ("Compliance with the conditions of supervision, including refraining from engaging in criminal conduct and paying restitution, however, is required behavior while serving a term of supervised release."). As courts have observed, "if every defendant who complied with the terms of supervised release were entitled to early termination, 'the exception would swallow the rule.'" *United States v. Kassim*, No. 15 Cr. 554-3 (KPF), 2020 WL 2614760, at *2 (S.D.N.Y. May 22, 2020) (citing *United States v. Medina*, 17 F. Supp. 2d 245, 247 (S.D.N.Y. 1998)).

While the court need not find extraordinary, compelling, or changed circumstances to justify an early termination of supervised release, this does not mean that such circumstances are irrelevant to ruling on a motion under § 3583(e)(1). *United States v. Ferriero*, No. 13-0592 (ES), 2020 WL 6701469, at *2 (D.N.J. Nov. 13, 2020) (citing *Melvin*, 978 F.3d at 53); *accord United States v. Parisi*, 821 F.3d 343, 347 (2d Cir. 2016). This is because, if a sentence was "sufficient, but not greater than necessary" when first pronounced, pursuant to 18 U.S.C. § 3553(a), it would

5

be expected that something has changed that would justify an early end to a term of supervised release. *Melvin*, 978 F.3d at 53; *United States v. Jackson*, No. 11-55, 2022 WL 2789870, at *2 (W.D. Pa. July 15, 2022); *United States v. Santoro*, No. 21-76 (MAS), 2022 WL 37471, at *2 (D.N.J. Jan. 4, 2022); *Ferriero*, 2020 WL 6701469, at *2. In other words, extraordinary circumstances may be sufficient to justify early termination of a term of supervised release, but they are not necessary for such a termination. *Melvin*, 978 F.3d at 53; *United States v. McClamma*, 676 F. App'x 944, 947 (11th Cir. 2017) ("New or unforeseen circumstances can justify a modification, but such circumstances are not necessary."); *Parisi*, 821 F.3d at 347 (recognizing that "changed circumstances may in some instances justify a modification" of a term of supervision). Nonetheless, "'generally, early termination of supervised release under § 3583(e)(1)' will be proper 'only when the sentencing judge is satisfied that new or unforeseen circumstances' warrant it." *Melvin*, 978 F.3d at 53 (quoting *Davies*, 746 F. App'x at 89); *Seymore*, 2023 WL 3976200, at *1 ("[E]arly termination is usually granted only in cases involving changed circumstances, such as exceptionally good behavior." (quoting *Smith*, 2014 WL 68796, at *1)).

According to Cantu's Presentence Report ("PSR"), prepared on June 4, 2013, his offense of conviction entails his possession with intent to distribute 50 grams or more of methamphetamine. On October 8, 2012, a cooperating individual ("CI"), at the direction of narcotics officers, purchased 5.2 grams of methamphetamine "ice" from an unindicted individual in Port Arthur, Texas, whose source of supply was later identified as Cantu. On October 25, 2012, a CI purchased 27.5 grams of a mixture or substance containing 14.5 grams of actual methamphetamine for $1,800 from Cantu at a location in Port Arthur. On November 7, 2012, a

CI purchased 13.9 grams of methamphetamine "ice" for $900 from Cantu in Port Arthur. Drug Enforcement Administration agents and local police officers executed a search warrant at Cantu's residence on November 8, 2012. Agents discovered a safe in the master bedroom closet with the following contents: 256.6 grams of a mixture or substance containing 201.8 grams of actual methamphetamine; a Smith & Wesson 9mm handgun loaded with 13 rounds of ammunition; 25 rounds of 9mm ammunition; digital scales, numerous clear plastic baggies, and a replica aerosol can with a false bottom. On January 4, 2013, a CI reported that Cantu would be transporting methamphetamine from Houston to Nederland, Texas, later that day. Surveillance officers observed Cantu and his wife arrive at a motel in Nederland, where they detained him and searched his vehicle. He was found to be in possession of 445.5 grams of methamphetamine "ice" and $2,992 in United States currency. Cantu was held responsible for a total of 216.3 grams of methamphetamine (actual) and 464.6 grams of methamphetamine "ice." When interviewed by Probation, Cantu admitted his involvement in the offense. He stated that he was selling methamphetamine for income and was "fronted" 1 pound of methamphetamine for $10,000, which he expected to sell for $12,000, profiting $2,000.

Cantu's PSR reveals that he has an extensive criminal history, which includes prior convictions for conspiracy to possess with intent to distribute cocaine, aiding and abetting in the distribution of cocaine, conspiracy to commit murder, failure to identify oneself to a peace officer, assault - family member, unauthorized use of a motor vehicle, possession of marijuana, possession of a controlled substance (cocaine) (2x), and assault. He failed to comply with a previous term of supervised release by possessing and using drugs on three occasions, failing to comply with treatment rules and regulations, and failing to report to the probation officer. The circumstances

of his conspiracy to commit murder conviction are particularly disturbing. According to the facts reported in his PSR, Cantu and his brother, Jose Cantu, picked up a hitchhiker in West Virginia on May 19, 1998. At some time during the ensuing two weeks, Jose shot and killed the hitchhiker. Both Cantu and his brother dismembered the body and buried most of the body parts in multiple locations at their residence and discarded other parts under a nearby bridge. Various body parts were discovered on several occasions, culminating in the discovery of the victim's skull and the identification of the remains in 2001. Cantu also has a long history of poly-substance abuse, including the regular use of marijuana, alcohol, crack cocaine, powder cocaine, and methamphetamine up to his most recent arrest.

      In this situation, the court finds that Cantu's post-release conduct does not warrant early termination of his supervised release. Although Cantu maintains that he has fully complied with his conditions of release to date, he identifies no new or exceptional circumstances or needs. He states that he has worked for the same trucking company for several years and claims that he would qualify for better routes if he were able to travel freely, which would make him more financially secure. Cantu made the same argument in his prior Motion to Travel. At that time, Probation's investigation revealed that his supervising officer in the Southern District of Texas informed him that he could not travel on the roads for months at a time because that would impede the ability to supervise him properly, but that she was willing to work with him on his schedule. Probation reported that it had offered Cantu the option to travel, with his route announced ahead of time, as long as he were home at least one week between trips to allow for visits and random drug screening. Nevertheless, Cantu refused to accept routes within these parameters. Probation confirmed that there were other routes available for Cantu with a schedule that would allow him

to be home for longer periods of time, yet, at the time, he continued to elect the two-weeks on, two-days off schedule. Hence, despite Probation's willingness to work with him on his travel schedule, he refused to make the requested adjustments. It is unknown whether Cantu subsequently accepted these parameters and has been working the modified schedule suggested by Probation. At this time, however, Cantu wants to be released from supervised release altogether, which the court finds to be inappropriate under the circumstances.

Courts have often denied requests for early termination of supervised release based on a defendant's desire to travel for business purposes or to visit family. *See United States v. Alber*, No. 14-491(SRC), 2022 WL 1683710, at *3-4 (D.N.J. May 25, 2022) (travel for job training and family needs); *Santoro*, 2022 WL 37471, at *3 (travel out-of-state to spend time with family); *United States v. Tinsley*, No. 12-263, 2020 WL 1472428, at *3 (W.D. Pa. Mar. 26, 2020) (travel for "business opportunities"); *United States v. Gonzalez*, No. 94-cr-0134 (JSR), 2015 WL 4940607, at *1 (S.D.N.Y. Aug. 3, 2015) (travel for out-of-state employment training programs); *United States v. Gardner*, No. 03-CR-194, 2012 WL 4864997, at *1 (E.D. Wis. Oct. 12, 2012) (travel out-of-state to work as a promoter and become a professional boxer). A defendant's failure to provide concrete information "demonstrating lost potential business opportunities due to his travel restrictions" typically results in denial of his request for early termination of supervised release, particularly where Probation already permits domestic travel with prior approval. *See United States v. Olivieri*, 72 F. Supp. 3d 401, 403-04 (S.D.N.Y. 2014) (travel outside the district for employment purposes, where Probation had previously granted every domestic travel request the defendant submitted); *see also United States v. Coleman*, No. 15-543, 2021 WL 4940979, at *3 (E.D. Pa. Oct. 22, 2021) (travel for both business and charitable work, where the defendant

failed to provide "specific examples" of instances where he was "denied permission to travel . . . for purposes that are legitimately related to his professional or charitable endeavors"); *United States v. Black*, No. 10-CR-303-A, 2013 WL 2527371, at *3 (W.D.N.Y. June 10, 2013) (travel for business reasons, where the defendant "report[ed] no specific instance when the travel-approval process has had a concrete negative effect on his business"). In this instance, the court finds that Cantu's claim that he would qualify for better routes if released from supervision is not sufficiently specific to warrant early termination, as he does not detail the precise routes he would seek, show that he would be assigned them, or demonstrate how his compensation would be affected by traveling any additional or alternate routes.

Courts have similarly denied requests for early termination of supervised release where a defendant claims that early termination will improve his employment prospects without providing concrete support for this contention. *See United States v. Lagone*, No. 10-CR-818 (JFB), 2017 WL 606016, at *4 (E.D.N.Y. Feb. 15, 2017) (denying early termination in part because the defendant "merely generally contended that early termination would bolster his job prospects" and did not provide more detailed information); *Gonzalez*, 2015 WL 4940607, at *1-2 (refusing to grant early termination where the defendant failed to "establish[ ] that the terms of his supervised release pose[d] any hazard to his employment" and did not "explain[ ] how the terms of his supervised release [had] 'even an intangible impact' on his employment" (quoting *Black*, 2013 WL 2527371, at *3)); *Olivieri*, 72 F. Supp. 3d at 403-04 (determining that the defendant's circumstances did not warrant early termination in part because he "advanced no basis for his contention that 'the restrictions and general weight of supervised release' impede[d] his employment"); *United States v. Ogele*, No. CR 06-546 PJH, 2012 WL 6035537, at *2 (N.D. Cal.

Dec. 4, 2012) (refusing to grant early termination in part because the defendant "offer[ed] no details of prospective business opportunities" and failed to "explain why fulfilling his term of supervised release would inhibit his ability to make a reasonable living").  Here, Cantu fails to explain how the conditions of his supervised release limit his employment opportunities in a significant manner.  He does not clarify how being on supervised release keeps him from furthering his career or achieving additional goals, otherwise interferes with his family responsibilities, or prevents him from engaging in sports, entertainment, or volunteer activities.  Under the circumstances, the court finds the current conditions of Cantu's supervised release are not onerous and remain appropriate in view of his offense of conviction involving his possession with intent to distribute a substantial quantity of methamphetamine in which he also possessed a firearm and ammunition, his prior crimes of violence and drug offenses, his previous failure to comply with the conditions of his supervised release, as well as his long history of poly-substance abuse.

  At this time, Cantu has served over half of his five-year term of supervised release.  While Cantu's achievements to date should be commended, continuing him on supervision will provide him the best opportunity for success in reentry in view of his prior involvement in crimes involving drug distribution, acts of violence, and possession of a firearm, along with his history of substance abuse.  Requiring Cantu to complete his entire, five-year term of supervised release safeguards against the reoccurrence of criminal activity and drug use, while imposing only a minimal burden on Cantu.  Generally, early termination of supervised release is not granted unless there are significant medical concerns, substantial limitations on employment, or extraordinary post-release accomplishments that would warrant such a release.  Cantu does not identify any such

circumstances in his motion and is instead seeking early termination of his supervision simply for complying with the conditions imposed by the court. Thus, although Cantu appears to be on the right path, the court believes that completion of his full term of supervised release appropriately reflects the seriousness of his offense, deters future criminal conduct, and provides needed structure for his continued rehabilitation. *See Lynn*, 2022 WL 2446328, at *4. The court, likewise, is of the opinion that Cantu's current sentence, including the five-year term of supervised release, was appropriate at the time of sentencing and remains so. *See United States v. Lewis*, No. 17-CR-28-FPG, 2021 WL 4519795, at *3 (W.D.N.Y. Oct. 4, 2021). As Probation points out:

> Although Mr. Cantu has apparently maintained compliance during this supervision term, his extensive criminal history of violence and previous noncompliance suggests a heightened risk to the community and for recidivism. There appears to be no extraordinary or compelling reason to warrant early termination at this time, outside of his general compliance with the Court's conditions. As such, the U.S. Probation Office in the Eastern District of Texas respectfully recommends the Court deny the motion and allow Mr. Cantu to continue on supervision as directed.

The court concurs with Probation's assessment of the situation and finds that early termination of Cantu's five-year term of supervised release would not be in the interest of justice.

III. Conclusion

In accordance with the foregoing, Cantu's *Pro Se* Motion for Early Termination of Supervised Release (#54) is DENIED.

SIGNED at Beaumont, Texas, this 10th day of October, 2024.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE